NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| OLUSOLA OJELADE and SHERIFAT SOLA-OJELADE,<br><br>Plaintiffs,<br><br>v.<br><br>OCWEN FINANCIAL CORPORATION, PHH MORTGAGE SERVICING CORPORATION, NEWREZ LLC, and SHELLPOINT MORTGAGE SERVICING<br><br>Defendants. | Civil Action No. 25-1111 (RK) (JBD)<br><br>**OPINION** |

**KIRSCH, District Judge**

**THIS MATTER** comes before the Court upon Defendant PHH Mortgage Corporation's ("PHH") Motion to Dismiss (ECF Nos. 12; 12-1, "MTD") the Complaint (ECF No. 1, "Compl.") filed by *pro se* Plaintiffs Olusola Ojelade and Sherifat Sola-Ojelade (together, "Plaintiffs"). Plaintiffs filed an opposition to the MTD (ECF No. 13, "Opp.") and PHH filed a reply (ECF No. 15, "Reply"). Defendants NewRez LLC ("NewRez") and Shellpoint Mortgage Servicing ("Shellpoint") have not appeared in this action. The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, PHH's MTD is **GRANTED** and Plaintiffs' Complaint is **DISMISSED** without prejudice as to all Defendants except Shellpoint.

## I.    BACKGROUND

At this juncture, the Court accepts as true all of Plaintiffs' allegations and construes them liberally and in the light most favorable to the *pro se* Plaintiffs, endeavoring to decipher and discern

the factual basis of Plaintiffs' skeletal and scattershot, handwritten pleading. *See Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). Plaintiffs allege that in August 2005, they secured a mortgage on their home in Sayerville, New Jersey with Defendant Ocwen Financial Corporation ("Ocwen") as the loan servicer. (Compl. at 3.)[1] In 2013, Ocwen offered Plaintiffs a loan modification, which, Plaintiffs assert, modified their mortgage payment amount, and also consolidated two mortgages into one single mortgage. (*Id.*)[2] Despite Plaintiffs' reference to a second mortgage, the Complaint leaves the Court to wonder when and under what circumstances this mortgage came to be, what the value of the mortgage was, and whether Plaintiffs ever made payments toward the balance of this mortgage; and if not, what, if anything, the mortgagee did as a result of Plaintiffs' nonpayments.

Over a decade later, in August 2024, Plaintiffs sold their property and attempted to pay off the mortgage, using the proceeds from the sale. (*Id.*) To their surprise, PHH, and their alleged successor company, NewRez, only lifted "part of the lien," claiming that Plaintiffs still had a debt to settle: the second mortgage. (*Id.*) NewRez informed Plaintiffs that they had to contact Shellpoint, the company to whom the second mortgage was transferred in 2021, and pay an outstanding sum of $82,000. (*Id.* at 6.)

As alleged, the four defendants in this case—Ocwen, PHH, NewRez—can be categorized in two different tranches. Defendants "Ocwen/P[H]H/NewRez" fall into the first bucket: Plaintiffs allege receiving no communication about the second mortgage from these defendants from 2013

---

[1] Defendant PHH asserts that it has been "incorrectly pled as 'Ocwen Financial Corporation (doing business as) PHH Mortgage.'" (Opp. at 1.) The Court recognizes that the pending MTD was filed on behalf of PHH Mortgage Corporation, but still refers to allegations as to Ocwen, per Plaintiffs' Complaint.

[2] Although Plaintiffs do not specifically allege that they took out a second mortgage on their house, the Court infers this fact based on Plaintiffs' allegation that the alleged loan modification consolidated the two mortgages into a single mortgage.

(the year of the alleged modification) through 2021 (the "2021 Defendants"). (*Id.*) The second bucket, which includes only defendant Shellpoint (the "2024 Defendant"), picks up chronologically where the first bucket leaves off. Plaintiffs allege that Shellpoint purchased the second mortgage in 2021, and never sent any communications about it until their property was sold in August 2024. (*Id.*) The defendants' combined failure to communicate allegedly led Plaintiffs to believe that they had no outstanding balance on the second mortgage. (*Id.*) Although Plaintiffs felt "ambushed" by the news of their second mortgage, they still ultimately paid it off. (*Id.* at 4.) Now, invoking the Truth in Lending Act, 15 U.S.C. § 1601 *et seq.* (*id.* at 2), Plaintiffs seek a refund of their payment in the form of nearly $82,000, as well as compensation of $10 million for "immeasurable emotional and financial trauma suffered," lost investment opportunities, damage on their credit score, and to deter companies from engaging in similar conduct. (*Id.* at 4.)

Plaintiffs filed their form Complaint on February 8, 2025. (ECF No. 1.) On March 9, the *pro se* Plaintiffs filed certificates of service, purportedly averring that service had been effectuated on all defendants: Ocwen, PHH, Shellpoint, and NewRez. (*See* ECF No. 9.) While the Court takes no position as to whether proper service was effectuated pursuant to Federal Rule of Civil Procedure 4, the Court notes that neither Shellpoint nor NewRez has appeared in this case.

In the weeks that followed, Plaintiffs' allegations have been supplemented by a litany of documents and factual assertions offered up by both parties, many of which the Court will not consider on a motion to dismiss. *See Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 232 (3d Cir. 2015). Two weeks after filing their Complaint, on February 23, Plaintiffs filed six exhibits—a series of correspondence between Plaintiffs and Shellpoint, Ocwen, and NewRez, regarding the status of their two mortgages. (ECF No. 7.) PHH filed its MTD on March 17, and

attached three exhibits: Plaintiffs' First Mortgage (ECF No. 12-2), Plaintiffs' Second Mortgage (ECF No. 12-3), and the Loan Modification Agreement (ECF No. 12-4). On March 23, Plaintiffs filed a "PLEADING subsequent to Original Complaint: Reply to Defendants' Memorandum of Defense," which the Court will construe as an opposition to the MTD. (ECF No. 13); Local Civ. R. 7.1(d)(2).[3] PHH replied. (ECF No. 15.)[4] The pending MTD is now ripe for decision.

## II.    **LEGAL STANDARD**

For a complaint to survive dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure, it must contain "sufficient factual matter" to state a claim for relief that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570); *Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A court must be mindful to hold a *pro se* plaintiff's

---

[3] In their March 23 filing, Plaintiffs attach three exhibits with information about a government home loan program called "Making Home Affordable." (*See* ECF No. 13.)

[4] After PHH filed its Reply, Plaintiffs filed a one-page document titled, "Plaintiffs' Pleading: Said Second Mortgage Debt not Showing on Plaintiffs' Credit History." (*See* ECF No. 16.) This document appears to be an improper rebuttal to one or more factual assertions in PHH's MTD and Reply, which was not authorized by the Court. *See* Local Civ. R. 7.1(d)(6) ("No sur-replies are permitted without permission of the Judge to whom the case is assigned."). Accordingly, the Court has not considered this submission. *See Mattern v. City of Sea Isle*, 131 F. Supp. 3d 305, 312–13 (D.N.J. Sept. 15, 2015).

complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

In deciding a Rule 12(b)(6) motion, the court can only consider "the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). A court may also consider any document "integral to or explicitly relied upon in the complaint" when ruling on a motion to dismiss. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

### III.    DISCUSSION

#### A. FACTUAL ALLEGATIONS AND DOCUMENTS OUTSIDE THE PLEADINGS

Plaintiffs' Complaint raises a series of questions about the alleged mortgages, their potential consolidation or extinguishments, who notified whom about which mortgages and balances and when, and whether Plaintiffs knew or should have known that their second mortgage was still active. Both parties attempt to answer these questions with a series of competing factual assertions and exhibits. But this sort of factual inquiry is inappropriate at the motion to dismiss stage. The Court's current objective is "limited to determining whether [Plaintiffs] ha[ve] pleaded a claim upon which relief can be granted, and in making that determination, [the Court] does not consider documents, such as documentary exhibits, outside the operative complaint." *Korman v. Pennsylvania State Police Honesdale Barracks*, No. 21-1516, 2023 WL 2224437, at *9 (M.D. Pa. Feb. 24, 2023). Furthermore, while the Court is bound to "accept the allegations in the complaint as true," the Court is "not compelled to accept assertions in a brief without support in the pleadings. After all, a brief is not a pleading." *Chavarriaga*, 806 F.3d at 232.

For clarity, the Court now reviews the various factual allegations and exhibits and, applying the appropriate framework for a motion under Rule 12(b)(6), determines what consideration should be afforded to each.

As always, the Court begins with Plaintiffs' allegations, which are handwritten on a form complaint. (*See* Compl.) The Court must accept these allegations as true and determine whether these allegations sufficiently state a claim upon which relief can be granted. *See Kulwicki*, 969 F.2d at 1462. Filed with the Complaint is "Appendix A," which contains a restatement of many of the same allegations from the handwritten portion of the Complaint. (*Id.* at 6–7.) This document does not appear to have been written for the purposes of present litigation; indeed, the final paragraph "implore[s] and request[s]" action from the Consumer Financial Protection Bureau, not this Court. (*Id.* at 7.) Nonetheless, receiving no objections from PHH, the Court will consider this document part of the allegations because the Complaint form advises Plaintiffs to "[a]ttach additional sheets of paper as necessary" to state claims (*id.* at 3), Plaintiffs, as part of their allegations, state that "further details" are in the attachment, and it does not appear that Plaintiffs had sufficient room to write all of their allegations in the complaint form.

Two weeks after the filing of the Complaint, Plaintiffs filed to the docket seven documents that they title as "Exhibits" to the Complaint. (*See* ECF Nos. 7, 8.) These exhibits consist of six letters between Plaintiffs and NewRez or Plaintiffs and Shellpoint, dated between July 29, 2024 (just before Plaintiffs sold their home), and February 3, 2025. (*See generally* ECF Nos. 7, 7-2–7-6.) Also included is Plaintiffs' eleven-paged application for debt relief to Ocwen stemming from underemployment, dated May 7, 2013. (*See* ECF No. 7-1.) Attached to their brief in opposition, Plaintiffs also attached informational documents about a federal mortgage program. (*See* ECF Nos. 13-1–13-3.) None of these documents are "integral or explicitly relied upon" in the complaint, and

therefore the Court does not consider them. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d at 1426. Indeed, Plaintiffs do not reference any of these communications in their pleadings, and many of the communications that Plaintiffs seek this Court to consider post-date any allegation in the Complaint.

PHH's MTD begins with a recounting of the factual history of the case, relying in part on Plaintiffs' "Exhibits," discussed above. PHH also attaches three exhibits to its MTD: Plaintiffs' two mortgages, and the "Loan Modification Agreement." (*See* ECF Nos. 12-2–12-4.) The Complaint specifically mentions the two mortgages and the mortgage modification document, and relies on the information contained therein to state a claim. (*See* Compl. at 3.) The Court finds that these exhibits *are* "explicitly relied upon in the complaint" and will therefore consider them. *See In re Burlington Coat Factory Sec Litig.*, 114 F.3d at 1426; *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) *see also Keon Hee Lee v. BSI Fin. Servs.*, No. 15-1797, 2015 WL 4757935, at *2 (D.N.J. Aug. 11, 2015) ("The [l]oan and [m]ortgage documents are essential to and explicitly relied upon in the Complaint, so they may be considered here."); *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 553 (M.D. Pa. 2010) (considering a mortgage contract at the motion to dismiss stage because it is integral to the allegations in the complaint).

## B. TRUTH IN LENDING ACT CLAIM

Plaintiffs bring a single cause of action, pursuant to the Truth in Lending Act, which they cite as "15 U.S.C. § 1601, *et seq.*" (Compl. at 2.) TILA is not mentioned any other time in the Complaint, and Plaintiffs do not cite to a provision any more specific than "§ 1601, *et seq.*" which appears to refer to the entire Act. This level of generality is insufficient to state a claim as a matter of law.[5]

---

[5] Courts in this circuit routinely dismiss claims under TILA that do not identify any specific provision of the Act under which defendants are purportedly liable. *See, e.g.*, *Hatchigian v. Capital One, N.A.*, No. 24-

Taking Plaintiffs' *pro se* status into account, however, the Court presumes that Plaintiffs mean to allege a violation of TILA Section 1638(f) "which requires that residential mortgage loan servicers transmit monthly statements to the 'obligor'—the consumer." *See Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 589 (D.N.J. 2016) (citing 15 U.S.C. § 1638(f)); *see also* 12 C.F.R. § 1026.41(a)(2) ("A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement.") Section 1640 confers a private cause of action on borrowers against creditors for violations of "these disclosure provisions." *Ramadan v. Chase Manhattan Corp.*, 156 F.2d 499, 500–01 (3d Cir. 1998). Plaintiffs allege that from the time their loan was modified in 2013, which they claim extinguished the second mortgage, they did not receive any communications regarding their outstanding balance on the second mortgage, and therefore assumed it did not exist. (*See* Compl. at 6.)

Plaintiffs' factual contentions, however, are highly suspect or appear to be belied by the documents, which are integral to Plaintiffs' cause of action.. Plaintiffs allege that they received a "loan modification changing [their] payment into a new amount and *one account as against the previous two*." (*Id.* (emphasis added).) PHH attaches to its MTD the loan modification agreement itself, which has not been refuted or contested in any way by Plaintiffs. (*See* ECF No. 12-4.) Consistent with Plaintiffs' allegations, the loan modification was signed by Plaintiffs in October 2013. (*Id.* at 9.) There is no mention in the entire agreement of consolidating the mortgages into a single account. The modification agreement lists the same loan number on every single page,

---

2382, 2024 WL 4606489, at *3 (E.D. Pa. Nov. 27, 2024) ("In failing to plead which provisions of TILA confer a cause of action, Plaintiff has not stated a cognizable claim."); *Rankin v. Saldutti, LLC*, No. 19-1508, 2020 WL 256433, at *6 (E.D. Pa. Jan. 17, 2020) ("Alleging a violation of the TILA in a complaint without specifying the specific TILA section or subsection is insufficient to state a plausible claim."); *Everett v. Sallie Mae*, 23-992, 2023 WL 4181989, at *2 (M.D. Pa. June 26, 2023) (same). Accordingly, Plaintiffs failure to specify which provision of TILA the defendants purportedly violated could be sufficient reason to dismiss their Complaint.

ending in 8208. (*See, e.g., id.* at 1.) There is no reference to any other loan or loan number in the document. Among other things, the terms of the loan modification provide for a new loan balance, inclusive of all amounts and arrearages past due. (*Id.* at 2.) Plaintiffs' self-serving allegations of a purported merger of two loans is demonstrably inconsistent with the loan modification agreement. As such, because an exhibit contradicts the allegations in the complaint, "the exhibits control." *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 111 (3d Cir. 2018). After all, "[b]y relying on [a] document to form the basis of a claim, the plaintiff is on notice that the document will be considered. When allegations contained in a complaint are contradicted by the document it cites, the document controls." *Jeffrey Rapaport M.D., P.A. v. Robin S. Weingast & Assocs., Inc.*, 859 F. Supp. 2d 706, 714 (D.N.J. 2012) (citation and quotations omitted).

Although Plaintiffs' second mortgage appears not to have been modified by the alleged modification agreement, this does not alter Plaintiffs' allegation that from 2013 until they sold their house in 2024, they did not receive any information from any mortgage service provider about the second mortgage. (*See* Compl. at 3, 6.) This allegation alone raises the specter of a TILA claim. *See, e.g., Cole v. Fed. Nat'l Mortg. Ass'n*, No. 15-3960, 2017 WL 623465, at *5 (D. Md. Feb. 14, 2017) (denying motion to dismiss Section 1638(f) claim because plaintiff alleged that she did not receive period mortgage statements and she sustained financial damages); *Pierson v. Ocwen Loan Servicing, LLC*, No. 15-2314, 2017 WL 10110296, at *3 (N.D. Tex. June 22, 2017) (denying motion to dismiss because plaintiff alleged that he did not receive a monthly mortgage statement).

PHH argues, however, that even if Plaintiff *could* state a TILA claim, it is barred by the statute's one-year limitations period. *See* 15 U.S.C. § 1640(e) ("Any action under this section may

be brought . . . within one year from the date of the occurrence of the violation.").[6] PHH asserts that the limitations period began to run in 2013, when Plaintiffs allegedly stopped receiving communications about their second mortgage, and therefore the period ended in 2014, one year later. (Reply at 2.) Since this action was filed in February 2025, it would be well outside the applicable limitations period. (*Id.*)[7] Plaintiffs, in response, argue that the statute of limitations does not apply because Defendants "gave the impression and confirmed" that the second mortgage was "closed and settled." (Opp. at 1.)

TILA provides that any action may be brought "within one year from the date of the *occurrence*" of a violation, *see* 15 U.S.C. § 1640(e) (emphasis added), and there are multiple possible dates on which the alleged violation could have "occurred" in this case. According to the Complaint, the 2021 Defendants, Ocwen, PHH, NewRez should have sent statements about the second mortgage from 2013 through 2021, and then Shellpoint, the 2024 Defendant, should have sent statements starting in 2021 through the date of the sale in 2024. (Compl. at 6.) PHH argues that the alleged violation occurred in 2013, which would have been the first date that Plaintiffs should have received a communication about their mortgage, but did not. (*See* MTD. at 4; Reply at 2–3.) Although violations of TILA in the mortgage context often accrue "when the underlying [mortgage] contract is executed," *see Herzog v. IndyMac Bank, FSB*, No. 11-4571, 2011 WL

---

[6] "While the language of Federal Rule of Civil Procedure 8(c) indicates that a statute of limitations defense cannot be used in the context of a Rule 12(b)(6) motion to dismiss, an exception is made where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." *Smith v. United States*, No. 24-3030, 2025 WL 1201873, at *1 n.2 (3d Cir. Apr. 25, 2025) (quoting *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1384 n.1 (3d Cir. 1994)) (cleaned up).

[7] Plaintiffs, in their opposition, cite to the federal government's Home Affordable Modification Program, without asserting that they applied to, were accepted into, or were otherwise a participant in the program. (*Id.*) In short, Plaintiffs never allege that they were participants in this federal program, and so the Court will not consider it.

5513205, at *3 (D.N.J. Nov. 9, 2011), the TILA violation here occurred considerably later, because, as alleged, Defendants were in full compliance with TILA until at least 2013. (*See* Compl. at 3.) Here, unlike in a typical mortgage case, "the alleged § 1638(f) violation is more like an open-ended transaction, where a debtor has no cause for complaint until he realizes a problematic disclosure or improper finance charge." *See Burress v. Freedom Mortg. Corp.*, No. 20-15242, 2021 WL 4059831, at *5 (D.N.J. Sept. 7, 2021).

### The 2021 Defendants: Ocwen, PHH, and NewRez

Taking the allegations in the Complaint as true, the 2021 Defendants failed to issue the required mortgage statements from 2013 through 2021. (Compl. at 6.) "In the context of a creditor's failure to make disclosures required under TILA, the statute of limitations runs from *each instance* of Defendant's alleged failure to make a required disclosure." *Schwartz v. HSBC Bank USA, N.A.*, 160 F. Supp. 3d 666, 681 (S.D.N.Y. 2016) (emphasis added); *see also Burress*, 2021 WL 4059831, at *6. Accordingly, the statute of limitations runs as to Defendants Ocwen, PHH, and NewRez starting in 2021. Although Plaintiffs did not realize that they owed money on the second mortgage until 2024, when they sold their house, there is no contention that Ocwen, PHH, or NewRez failed to make any required disclosure after 2021. (*See* Compl. at 3, 6.) At that point, it was Shellpoint who allegedly failed to issue any disclosure. (*Id.* at 6.) Therefore, Plaintiffs should have filed an action against Ocwen, PHH, and NewRez sometime in 2022, but failed to do so. As to Ocwen, PHH, and NewRez, the action is time-barred.

Although the action is time-barred as to the 2021 Defendants, "the Third Circuit has held that TILA's statute of limitations is subject to equitable tolling in certain circumstances." *Sarsfield v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 560 (M.D. Pa. 2010) (citing *Ramadan*, 156 F.3d at 504–05). Such equitable tolling may be appropriate where (1) "the defendant has actively misled

the plaintiff respecting the plaintiff's cause of action;" (2) "the plaintiff in some extraordinary way has been prevented from asserting his or her rights;" or (3) "the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Id.* (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994)). A party seeking tolling must demonstrate that he "exercised reasonable diligence in investigating and bringing the claims." *Miller v. N.J. Dep't of Corr.*, 145 F.3d 616, 618–19 (3d Cir. 1998).

Plaintiffs argue that the statute of limitations does not apply (*see* Opp. at 1), but they have not alleged any facts sufficient to toll the statute of limitations. *See McKinney v. Lanigan*, No. 18-309, 2021 WL 288465, at *7 (D.N.J. Jan. 28, 2021) ("[F]ederal courts have repeatedly held that plaintiffs seeking to toll the statute of limitations on various grounds must have included the allegations *in their pleadings* . . ." (quoting *Wasco Prods, Inc. v. Southwall Techs., Inc.*, 435 F.3d 989, 991 (9th Cir. 2006) (emphasis added)). Plaintiffs' allegations jump forward in time from 2013, when they thought their mortgage was extinguished, until 2024, when they sold their house, providing no factual basis for any contention that any defendant "actively misled" Plaintiffs. *See Sarsfield, Inc.*, 707 F. Supp. 2d at 560. Although Plaintiffs, in their brief in opposition, assert that Defendants "in substance, gave the impression and confirmed (by their vicarious conduct)" that the second mortgage was "closed and settled" (*see* Opp. at 1) no such "vicarious conduct" has been alleged. Plaintiffs further fail to allege that they had been prevented from filing this action or filed it in the wrong forum. *See Oshiver*, 38 F.3d at 1387. Instead, it appears that Plaintiffs were merely mistaken; they thought that they no longer owed any money on their second mortgage (even though they did), and therefore they did not question that they stopped receiving communications in 2013. For more than a decade, they simply failed to pay their second mortgage.

**The 2024 Defendant: Shellpoint**

As to defendant Shellpoint, however, who has purportedly been served (ECF No. 9), but has neither appeared in this action nor filed any motion to dismiss, Plaintiffs' Complaint does not facially run afoul of the TILA statute of limitations. *See Smith v. United States*, No. 24-3030, 2025 WL 1201873, at *1 n.2 (3d Cir. Apr. 25, 2025). The Complaint asserts that, as of August 2024 when Plaintiffs sold their home, they did not receive any communications from Shellpoint, even though they should have. (Compl. at 6.) Since August 2024 is the most recent occurrence of Shellpoint's alleged failure, *see Schwartz*, 160 F. Supp. 3d at 681, which was merely six months before Plaintiffs filed their Complaint, claims against Shellpoint survive, at least for now. *See* 15 U.S.C. § 1640(e).

Accordingly, PHH's MTD is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendants Ocwen, PHH, and NewRez only.

## CONCLUSION

For the foregoing reasons, PHH's Motion to Dismiss (ECF No. 12) is **GRANTED IN PART** and Plaintiffs' Complaint is **DISMISSED WITHOUT PREJUDICE** as to Defendants Ocwen, PHH, and NewRez only. Plaintiffs may file an Amended Complaint within 30 days of this Opinion. An appropriate Order accompanies this Opinion.

_____
**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: June 30, 2025