NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| OLUSOLA OJELADE and SHERIFAT SOLA-OJELADE,<br><br>Plaintiffs,<br><br>v.<br><br>PHH MORTGAGE SERVICING CORPORATION, *et al.*,<br><br>Defendants. | Civil Action No. 25-1111 (RK) (JBD)<br><br>**<u>OPINION</u>** |

**<u>KIRSCH, District Judge</u>**

**THIS MATTER** comes before the Court upon Defendant PHH Mortgage Corporation's ("PHH") Motion to Dismiss (ECF Nos. 21; 21-1, "MTD") the Amended Complaint (ECF No. 20, "AC") filed by *pro se* Plaintiffs Olusola Ojelade and Sherifat Sola-Ojelade (together, "Plaintiffs"). Plaintiffs filed an opposition to the MTD (ECF No. 30, "Opp.") and PHH filed a reply (ECF No. 31, "Reply"). The Court has considered the parties' submissions and resolves the matter without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, PHH's MTD is **GRANTED** and Plaintiffs' AC is **DISMISSED WITH PREJUDICE** as to PHH.

### I.        BACKGROUND

This case involves *pro se* Plaintiffs' purported mortgage loan modification and Defendants' alleged failure to provide periodic notice under the Truth in Lending Act ("TILA"). 15 U.S.C. § 1638(f); (*see* AC at 3). On June 30, 2025, the Court granted in part and denied in part a motion brought by Defendant PHH, Plaintiffs' initial loan servicer, to dismiss Plaintiffs' initial pleading. (ECF No. 19.) The Court dismissed Plaintiffs' complaint without prejudice against defendants

PHH, Ocwen Financial Corporation ("Ocwen"), and Newrez LLC ("Newrez") and granted Plaintiffs leave to amend their claim. (*Id.*) Only Plaintiffs' claim against Shellpoint Mortgage Servicing ("Shellpoint") survived. (*Id.*) On July 29, 2025, Plaintiffs filed another handwritten form complaint, naming PHH, Newrez, and Shellpoint as defendants.[1] (*See* AC.) Plaintiffs allege largely the same facts in their AC as they did in their initial complaint, despite the Court's clear explanation of the complaint's deficiencies. (*See* ECF Nos. 1, 18.)

In August 2005, Plaintiffs allege that they secured "two mortgage accounts" on their home in Sayreville, New Jersey with Ocwen as the loan servicer. (AC at 7.)[2] In 2013, Ocwen offered Plaintiffs a loan modification, which Plaintiffs allege "chang[ed] [their] payment into a new amount and one account as against the previous two." (*Id.*) After a decade of paying an allegedly consolidated mortgage "without fail," Plaintiffs sold their property in August 2024. (*Id.*) Plaintiffs allege that they used the proceeds of the sale to settle the outstanding mortgage with Ocwen's successors, PHH and Newrez. (*Id.*) To Plaintiffs' surprise, Newrez "released only one lien" and claimed that Plaintiffs still had a second outstanding mortgage of approximately $82,000, which was transferred to Shellpoint, an alleged subsidiary of Newrez,[3] in 2021. (*Id.*) Plaintiffs allege that three entities—PHH, Newrez, and Shellpoint—were responsible for servicing Plaintiffs' second mortgage loan at distinct periods of time: PHH and Newrez allegedly serviced the loan through 2021, and Shellpoint took over servicing the loan that same year through August 2024, at which

---

[1] Defendant PHH asserts that it has been "incorrectly pled as 'Ocwen Financial Corporation (doing business as) PHH Mortgage.'" (MTD at 1.) The Court notes that Plaintiffs no longer include Ocwen as a defendant. Plaintiffs list "PHH Mortgage Corporation" as an independent defendant without a D/B/A, and thus Ocwen is no longer a party to this action. (AC at 2–3).

[2] Because some pages of the AC lack page numbers, the Court uses the page numbers of the PDF, not the page numbers printed on the AC.

[3] Although Plaintiffs listed Shellpoint and Newrez as separate defendants in their AC, (AC at 2–3), Newrez's answer self-describes these defendants collectively as "Newrez LLC d/b/a Shellpoint Mortgage Servicing." (*See generally* ECF No. 27.)

point Plaintiffs sold their home. (*Id.* at 2–3, 7.) With respect to PHH and Newrez—the first two alleged servicers—Plaintiffs allege that they received no communication about the second mortgage from these Defendants following the loan modification in 2013.[4] (*Id.*)

Plaintiffs allege that Defendants' collective conduct violated the "[p]eriodic statements for residential mortgage loans" requirement of the TILA. 15 U.S.C. § 1638(f); (*see* AC at 3). Plaintiffs' single TILA claim is that Defendants failed to "transmit monthly statements to the 'obligor'—the consumer." *See Block v. Seneca Mortg. Servicing*, 221 F. Supp. 3d 559, 589 (D.N.J. 2016); *see also* 12 C.F.R. § 1026.41(a)(2) ("A servicer of a transaction subject to this section shall provide the consumer, for each billing cycle, a periodic statement . . . ."). For relief, Plaintiffs again seek a complete refund of the second mortgage amount they paid of $81,939.29, as well as $10 million in compensation for "financial and emotional trauma caused by the ambushed payment," lost investment opportunities, damage on their credit score, and as deterrence to companies from engaging in similar conduct.[5] (AC at 9.)

On July 31, 2025, two days after Plaintiffs filed their AC, Defendant PHH filed the instant MTD and attached three exhibits: Plaintiffs' first mortgage (ECF No. 21-2), Plaintiffs' second mortgage (ECF No. 21-3), and the loan modification agreement (ECF No. 21-4). Rather than file a motion themselves, Defendants Newrez and Shellpoint answered the AC on October 14, 2025. (ECF No. 27.) On November 18, 2025, Plaintiffs filed their opposition to the MTD.[6] (Opp.) PHH

---

[4] Because Newrez has now answered the AC, and it represents in its Answer that it does business as Shellpoint, (*see* ECF No. 27 at 1), Newrez potentially falls into the same bucket as Shellpoint: allegedly failing to communicate about the second mortgage loan from 2021 to 2024. However, because the pending MTD only concerns Defendant PHH, the Court takes no position on the matter at this time.

[5] It is unclear why Plaintiffs believe they would be entitled to a full refund of a mortgage—particularly one Plaintiffs acknowledge they benefited from—in connection with a Section 1638(f) claim. *See* 15 U.S.C. § 1640(a)(1) (providing compensation for "actual damages sustained").

[6] Plaintiffs initially did not file an opposition to the MTD. However, in light of Plaintiffs' *pro se* status, the Court granted Plaintiffs a *sua sponte* extension. (ECF No. 29.)

replied. (Reply.) PHH's pending MTD—seeking to dismiss the claims against *PHH only* for its alleged TILA violations from 2013 to 2021—is now ripe for decision.

## II.    LEGAL STANDARD

For a complaint to survive a motion to dismiss, it must contain "sufficient factual matter" to state a claim for relief that is "'plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Clark v. Coupe*, 55 F.4th 167, 178 (3d Cir. 2022). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678. When assessing the factual allegations in a complaint, courts "disregard legal conclusions and recitals of the elements of a cause of action that are supported only by mere conclusory statements." *Wilson v. USI Ins. Serv. LLC*, 57 F.4th 131, 140 (3d Cir. 2023). The court accepts all allegations in the complaint as true and gives the plaintiff "the benefit of every favorable inference to be drawn therefrom." *Kulwicki v. Dawson*, 969 F.2d 1454, 1462 (3d Cir. 1992). A court must be mindful to hold a *pro se* plaintiff's complaint to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).

## III.    DISCUSSION

In granting leave to amend, the Court's previous opinion specified two key issues with Plaintiffs' initial complaint: (1) Plaintiffs' "self-serving allegations of a purported merger of two loans" were "demonstrably inconsistent" with the plain text of the loan modification document, and (2) Plaintiffs had "not alleged any facts sufficient to toll the statute of limitations." (ECF No. 18 at 9, 12.) Plaintiffs' sparse, form AC remedies neither of these fatal deficiencies. The AC pleads

substantially identical facts as the initial complaint, with Plaintiffs' only addition providing conclusory assertions in an attempt to support equitable tolling. (*See* AC at 7–8; ECF No. 1.)

First, even with the opportunity to amend, Plaintiffs fail to contend with the inconsistencies between their allegations and the plain text of the mortgage documents.[7] Plaintiffs again allege that they received a "loan modification changing [their] payment into a new amount and *one account as against the previous two*." (*Id.* (emphasis added).) However, Plaintiffs' AC offers no facts to dispute the actual text of the loan modification agreement. As the Court detailed in its previous opinion, Plaintiffs' allegations are "demonstrably inconsistent with the loan modification agreement," which nowhere references more than a *singular* mortgage on Plaintiffs' house in Sayreville, New Jersey. (ECF No. 18 at 9.) In fact, the loan modification agreement, which repeats only a single "Loan Number" throughout, references the modifications made to "the Mortgage" (not *Mortgages*) 21 times across 11 pages. (ECF No. 21-4 at 2, 3, 6, 7, 9, 10, 11.)[8] Again, because an exhibit contradicts the allegations in the complaint, "the exhibits control." *Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018). The relevant documents do not support Plaintiffs' bare, self-serving, and conclusory allegations of a purported merger of loans. Instead, Plaintiffs modified only one mortgage and apparently neglected to pay the other.

Second, Plaintiffs did not support its claim for the equitable tolling of its claim against PHH. As the Court outlined in its previous opinion, Plaintiffs' claim against PHH—even if the allegations raise the "specter" of a Section 1638(f) TILA claim—is subject to a one-year statute of

---

[7] As it did in the previous opinion, (ECF No. 18, at 7), the Court—in addition the allegations in the AC—will consider PHH's three exhibits attached to their MTD: Plaintiffs' two mortgages and the loan modification agreement, (*see* ECF Nos. 21-2 to 21-4). *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (court may consider documents "integral to or explicitly relied upon in the complaint" or "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document[s]" in deciding motion to dismiss (cleaned up)).

[8] To avoid confusion given inconsistent pagination in the underlying documents for PHH's various exhibits, the Court cites to each exhibit's ECF page number.

limitations, meaning Plaintiffs should have filed an action against PHH before or during 2022. (ECF No. 18 at 9–11); 15 U.S.C. § 1640(e). The Court explained that only equitable tolling could save Plaintiffs' claim. (ECF No. 18 at 11–12 (discussing requirements of equitable tolling).)

Despite this guidance, Plaintiffs offer no meaningful factual allegations to support equitable tolling. Instead, Plaintiffs' AC contains conclusory legal assertions arguing that the limitations period has been equitably tolled since 2022 because PHH "actively misled" them. (AC at 8 (cleaned up); Opp. at 2–4); *See Sarsfield, Inc. v. Citimortgage, Inc.*, 707 F. Supp. 2d 546, 560 (M.D. Pa. 2010) (citing *Oshiver v. Levin, Fishbein, Sedran & Berman*, 38 F.3d 1380, 1387 (3d Cir. 1994), *overruled on other grounds by Rotkiske v. Klemm*, 890 F.3d 422 (3d Cir. 2018) (en banc)). Plaintiffs—relying only on this "actively misleading" theory—suggest that by failing to send monthly mortgage statements for the second mortgage while still sending statements for "a different specific amount," PHH misled Plaintiffs to believe there was not a second mortgage. (Opp. at 2.) Further, given PHH's continued communication on the first mortgage, Plaintiffs argue they were absolved of any required due diligence to discover the second mortgage.[9] (*Id.* at 3.)

Plaintiffs' legal assertions, in the absence of *any new factual* allegations, are insufficient to establish that PHH "actively misled" them. "To survive a motion to dismiss, [plaintiff]'s complaint must include 'sufficient factual matter' for the court to infer that discovery may show that tolling could keep alive his otherwise untimely claim." *Aversano v. Santander Bank, N.A.*, 828 F. App'x

---

[9] As they did in their opposition to the first MTD, Plaintiffs support this point by citing to a federal mortgage program "without asserting that they applied to, were accepted into, or were otherwise a participant in the program." (ECF No. 18 at 10 n.7; *see* Opp. at 2.) Again, the Court will not consider the mere existence of the program in assessing Plaintiffs' due diligence requirements. Moreover, Plaintiffs assert that the outstanding second mortgage balance "was never reported on Plaintiffs' credit report," while the first mortgage "always" was. (Opp. at 3.) However, Plaintiffs may not raise additional factual allegations in their opposition briefing. *Commonwealth. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." (cleaned up)) Accordingly, the Court will not consider these allegations at this juncture.

109, 112 (3d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678); *see also Hedges v. United States*, 404 F.3d 744, 751 (3d Cir. 2005) ("Equitable tolling is an extraordinary remedy . . . ."). To toll the statute of limitations in this case, Plaintiffs would need to plead that PHH engaged in "misleading conduct . . . that goes '*above and beyond*' the wrongdoing that underlies the substantive cause of action." *Menichino v. Citibank, N.A.*, No 12-58, 2013 WL 3802451, at *8 (W.D. Pa. July 19, 2013) (emphasis in original) (quoting *Lukovsky v. City & Cnty. of San Francisco*, 535 F.3d 1044, 1052 (9th Cir. 2008)). Plaintiffs attempt to rely on this substantive conduct, PHH's failure to correspond about the second mortgage, to *also* support its claim for equitable tolling. (AC at 7–8.) Plaintiffs do not plead that PHH filled mortgage documents or refinancing negotiations with misleading or "outright affirmative falsehoods" or that PHH and other mortgage servicers made it impossible for Plaintiffs to "have learned of their claims during the limitations period." *Menichino*, 2013 WL 3802451, at *8–9. Instead, Plaintiffs attempt to shoehorn the same facts pled in their original complaint—that PHH corresponded on one mortgage but not the other—into a conclusory legal argument. (*See* ECF No. 1 at 6; AC at 8.) PHH's failure to continue its required correspondence alone does not support an equitable tolling claim. *Id.* at *7–9; *cf Conover v. Patriot Land Transfer, LLC*, No. 17-4625, 2019 WL 397978, at *3 (D.N.J. Jan. 31, 2019) (distinguishing "mere non-disclosure" from "affirmative concealment" in determining equitable tolling) (internal quotation marks omitted)).

Plaintiffs' equitable tolling claim independently fails because Plaintiffs failed to exercise "reasonable due diligence." *Aversano*, 828 F. App'x at 112 (quoting *Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 509 (3d Cir. 2006)). In *Aversano*, the court held that the plaintiff had not undertaken due diligence of his interest rate where, given the plain language of the loan, he "could easily have discovered the key facts about his loan." *Id.* Here, Plaintiffs—who themselves allege

that they were aware of the second mortgage and do not contest that they reaped the benefits from it—remained on notice of the "possible existence" of TILA claims from the beginning of the relevant time period. (AC at 7); *see Menichino*, 2013 WL 3802451, at *7 ("[E]quitable tolling will be inapplicable if the plaintiff was on inquiry notice of the possible existence of the claim during the limitations period yet failed to investigate the possible existence of the claim." (citing *Cetel*, 460 F.3d at 507)). As discussed, the plain language of the loan modification specified only one mortgage, and thus a "key fact[]" about the loan Plaintiffs could have easily discovered. *Aversano*, 828 F. App'x at 112. Plaintiffs presumed that their mortgages were consolidated, a fact belied by relevant documents. Plaintiffs' reliance on PHH to deliver accurate correspondence is not enough to absolve their reasonable diligence requirements when they were on inquiry notice of such claims. Accordingly, because Plaintiffs fail to plead facts sufficient to equitably toll the statute of limitations for their TILA claim against PHH, that claim must again be dismissed.

Furthermore, because any further amendment would be "futile," dismissal is with prejudice. *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 111 (3d Cir. 2002). While the Court holds Plaintiffs' AC to "less stringent standards in light of their pro se status," Plaintiffs—even with notice of the prior complaint's deficiencies and the opportunity to consolidate their many previous filings into a single amended complaint, (*see* ECF Nos. 7, 8, 13-1, 13-2, 13-3, 16)—have failed to demonstrate that their TILA claims could be equitably tolled with further amendment. *Est. of Fabics v. City of New Brunswick*, 674 F. App'x 206, 210 (3d Cir. 2016). Plaintiffs' AC indicates that they "cannot cure [the] untimeliness" of their claims under the TILA, and their claims against PHH will be dismissed with prejudice. *DeLuca v. CitiMortgage*, No. 11-3634, 2012 WL 32136, at *5 (D.N.J. Jan. 4, 2012).

Accordingly, PHH's MTD is **GRANTED**, and the Complaint is **DISMISSED WITH PREJUDICE** as to Defendant PHH only.

## CONCLUSION

For the foregoing reasons, PHH's Motion to Dismiss (ECF No. 21) is **GRANTED** and Plaintiffs' Complaint is **DISMISSED WITH PREJUDICE** as to Defendant PHH only. An appropriate Order accompanies this Opinion.

_____

**ROBERT KIRSCH**
**UNITED STATES DISTRICT JUDGE**

<u>Dated</u>: December 8, 2025

10